UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAMON ELLIOTT | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v | ) |
| | ) Civil Action No. 04-2285 (ESH) |
| FEDERAL BUREAU OF INVESTIGATION | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56, defendant respectfully moves for summary judgment.  As

grounds for this motion, defendant asserts that there are no genuine issues of material fact and

that it is entitled to judgment as a matter of law.[1]  A memorandum of points and authorities, a

---

[1]  Plaintiff should take notice that any factual assertions contained in the affidavits and
other attachments in support of defendant's motion will be accepted by the Court as true unless
the plaintiff submits his own affidavits or other documentary evidence contradicting the
assertions in the defendant's attachments.  See Neal v. Kelly, 963 F.2d 453, 457 (D.C. Cir. 1992),
Local Civil Rule 7.1(h) and Fed. R. Civ. P. 56(e), which provides as follows:

> Supporting and opposing affidavits shall be made on personal
> knowledge, shall set forth such facts as would be admissible in
> evidence, and shall show affirmatively that the affiant is competent
> to testify to the matters stated therein.  Sworn or certified copies of
> all papers or parts thereof referred to in an affidavit shall be
> attached thereto or served therewith.  The court may permit
> affidavits to be supplemented or opposed by depositions, answers
> to interrogatories, or further affidavits.  When a motion for
> summary judgment is made and supported as provided in this rule,
> an adverse party may not rest upon the mere allegations or denials
> of the adverse party's pleading, but the adverse party's response, by
> affidavits or as otherwise provided in this rule, must set forth
> specific facts showing that there is a genuine issue for trial.  If the
> adverse party does not so respond, summary judgment, if
> appropriate, shall be entered against the adverse party.

statement of genuine issues of material fact not in dispute, and a proposed order granting the

relief sought are attached hereto.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN D.C. Bar # 451058
United States Attorney

_____
RUDOLPH  CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____
RHONDA C. FIELDS
Assistant United States Attorney
555 4th St., N.W,   DC 20530
202/514-6970

_____

Fed. R. Civ. P. 56(e).

2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| DAMON ELLIOTT | ) |
| | ) |
|     Plaintiff | ) |
| | ) |
|       v | ) |
| | )    Civil Action No. 04-2285 (ESH) |
| FEDERAL BUREAU OF INVESTIGATION | ) |
| | ) |
|     Defendant. | ) |

---

STATEMENT OF MATERIAL FACTS

    Defendant respectfully submits this statement of material facts as to which there is no dispute:

.    **Request to FBI**

    1.  By letter dated May 17, 2001 to FBIHQ, plaintiff requested a copy of FBI file number 95A-HQ-1214942.  Declaration of David M. Hardy ("Hardy Dec.") at ¶ 5.

    2.  By letter dated August 13, 2001, FBIHQ advised plaintiff that it had reviewed 124 pages and released 116 pages[2] to plaintiff, with certain information withheld pursuant to Privacy Act Exemption (j)(2) and FOIA Exemption 7C.  Plaintiff was advised of his right to appeal the FBI's action to the Department of Justice, Office of Information and Privacy ("OIP").  *Id*. at ¶ 7.

    3.  By letter dated September 4, 2001, plaintiff addressed a second letter to OIP requesting eight (8) pages that the FBI withheld in full.  *Id*. at ¶ 9.

    4.  The eight pages previously withheld as duplicates are included in Exhibit K.  *Id*. at p. 2 fn 1.

---

[2] These totals included the FBI cover sheet for FBI file number 95-HQ-1214942, which has not been counted as a page for purposes of this declaration.

**6-Page Referral from EOUSA**

5.  By letter dated February 8, 2001, plaintiff submitted a FOIPA request to the Executive Office for U.S. Attorneys ("EOUSA") seeking access to all records concerning himself as well as all exhibits in criminal case number PJM 97-053 (U.S. District Court District of Maryland (Greenbelt.) *Id*. at ¶ 12

6.  During its processing of documents responsive to plaintiff's FOIPA request, EOUSA had located six pages which originated with the FBI.  By letter dated December 3, 2002, the EOUSA referred these six pages to the FBI for processing and direct response to the requester. *Id*. at ¶ 13.

7.  By letter dated July 23, 2003, FBIHQ released all six pages to plaintiff from the EOUSA referral.  The release letter notified plaintiff that deletions were made pursuant to Exemption (j)(2) of the Privacy Act and FOIA Exemptions 2 and 7(C).

Respectfully submitted,

_____
KENNETH L. WAINSTEIN D.C. Bar # 451058
United States Attorney

_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____
RHONDA C. FIELDS
Assistant United States Attorney
555 4th St., N.W, DC 20530
202/514-6970

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DAMON ELLIOTT | ) |
| | ) |
|     Plaintiff | ) |
| | ) |
|     v | ) |
| | )    Civil Action No. 04-2285 (ESH) |
| FEDERAL BUREAU OF INVESTIGATION | ) |
| | ) |
|     Defendant. | ) |
| | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff *pro se* is an inmate in the Federal Correctional Institution at Coleman Florida.

Complaint at Caption. In 1997, in the U.S. District Court for the District of Maryland, plaintiff

was convicted of aggravated sexual assault in violation of 18 U.S.C. §2241 and was sentenced to

189 months imprisonment. Criminal Docket, MD MemOp. At the time of the offense, the

victim was a 16 year old minor. Declaration of David M. Hardy ("Hardy Dec.") at Ex. K p.

Elliott-1.

### CHRONOLOGY OF FOIA REQUEST

**Request to FBI**

By letter dated May 17, 2001to FBIHQ, plaintiff requested a copy of

FBI file number 95A-HQ-1214942. Hardy Dec. at ¶ 5.

By letter dated June 6, 2001, FBIHQ acknowledged receipt of plaintiff's request

and assigned the request FOIPA Number 0944088. *Id.* at ¶ 6.

By letter dated August 13, 2001, FBIHQ advised plaintiff that it had reviewed 124 pages and released 116 pages[3] to plaintiff, with certain information withheld pursuant to Privacy Act Exemption (j)(2) and FOIA Exemption 7C.  Plaintiff was advised of his right to appeal the FBI's action to the Department of Justice, Office of Information and Privacy ("OIP").  *Id*. at ¶ 7.

By letter dated August 28, 2001, plaintiff appealed to OIP, requesting a complete copy of FBI file number 95A-HQ-1214942.  *Id*. at ¶ 8.

By letter dated September 4, 2001, plaintiff addressed a second letter to OIP requesting eight (8) pages that the FBI withheld in full.  *Id*. at ¶ 9.

By letter dated September 18, 2001, OIP acknowledged receipt of plaintiff's appeal and assigned it Appeal Number 01-3698.  *Id*. at ¶ 10.

By letter dated July 9, 2002, OIP affirmed the FBI's action.  Plaintiff was advised that the FBI properly withheld certain information pursuant to Exemption (j)(2) of the Privacy Act and FOIA Exemption 7(C).  Plaintiff was advised that if he remained dissatisfied, he could seek judicial review in accordance with 5 U.S.C. § 552 (a) (4) (B).  *Id*. at ¶ 11.

The eight pages previously withheld as duplicates are included in Exhibit K.  *Id*. at p. 2 fn 1.

**6-Page Referral from EOUSA**

By letter dated February 8, 2001, plaintiff submitted a FOIPA request to the Executive Office for U.S. Attorneys ("EOUSA") seeking access to all records concerning  himself as well as all exhibits in criminal case number PJM 97-053 (U.S. District Court District of Maryland

---

[3] These totals included the FBI cover sheet for FBI file number 95-HQ-1214942, which has not been counted as a page for purposes of this  declaration.

2

(Greenbelt.)  *Id*. at ¶ 12

During its processing of documents responsive to plaintiff's FOIPA request, EOUSA had located six pages which originated with the FBI.  By letter dated December 3, 2002, the EOUSA referred these six pages to the FBI for processing and direct response to the requester. *Id*. at ¶ 13.

By letter dated July 23, 2003, FBIHQ released all six pages to plaintiff from the EOUSA referral.  The release letter notified plaintiff that  deletions were made pursuant to Exemption (j)(2) of the Privacy Act and FOIA Exemptions 2 and 7(C).  Plaintiff was advised that case was assigned Request Number GR 02-128 and that he could appeal any denials in the release to OIP. *Id*. at ¶ 14.

## II.  ARGUMENT

### A.    SUMMARY JUDGMENT STANDARD

Summary judgment may be granted in a FOIA case upon agency affidavits that are relatively detailed, non-conclusory, and made in good faith.  *See e.g., Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984); *Hayden v. NSA*, 608 F.2d 1381, 1387 (D.C. Cir. 1979).  Where no genuine dispute exists as to any material fact, summary judgment is required. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).  A genuine issue of material fact is one that would change the outcome of the litigation.  *Id.* at 248.  "The burden on the moving party may be discharged by 'showing' -- that is, pointing out to the [Court] -- that there is an absence of evidence to support the non-moving party's case."  *Sweats Fashions, Inc. v. Pannill Knitting Company, Inc.*, 833 F.2d 1560, 1563 (Fed. Cir. 1987) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (emphasis in original)).

Once the moving party has met its burden, the non-movant may not rest on mere

allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Thus, to avoid summary judgment, the plaintiff must state specific facts or present some objective evidence that would enable the court to find he is entitled to relief. In *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute. *Id.* at 322-23.

In an opinion issued the same day as *Celotex*, the Supreme Court attempted to explain under what circumstances summary judgment is appropriate:

> If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted . . . [T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249-50, 252. *See Johnson v. Digital Equipment Corp.*, 836 F. Supp. 14, 15 (D.D.C. 1993). In *Celotex*, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327.

## B.    THE *VAUGHN* AFFIDAVIT

The purpose of a *Vaughn* submission is "to permit adequate adversary testing of the agency's claimed right to an exemption." *NTEU v. Customs*, 802 F.2d 525, 527 (D.C. Cir. 1986) (citing *Mead Data Central v. United States Dept. of the Air Force*, 566, F.2d 242, 251 (D.C. Cir. 1977), and *Vaughn v. Rosen*, 484 F.2d 820, 828 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977

(1974)).  Thus, the submission must contain "an adequate description of the records" and "a plain

statement of the exemptions relied upon to withhold each record".  *NTEU*, 802 F.2d at 527 n.9.

"The form of the *Vaughn* index is unimportant and affidavits providing similar information can

suffice."  *Spirko v. U.S. Postal Service*, 147 F.3d 992, 998 n.4 (D.C. Cir. 1998) (citing *Gallant v.*

*NLRB*, 26 F.3d 168, 172-73 (D.C. Cir. 1994)).

     The defendant has submitted a declaration prepared by David M. Hardy, the Section

Chief of the Record/Information Dissemination Section ("RIDS"), Records Management

Division ("RMD"), at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington,

D.C. .  The *Vaughn* itemizations identify and describe the documents responsive to plaintiff's

FOIA request, and set forth the justification for exemptions claimed for the withholding of

certain information.

## C.    FBI HAS PERFORMED AN ADEQUATE SEARCH FOR RESPONSIVE RECORDS

     Where a FOIA plaintiff challenges the adequacy of an agency's search in response to a

Freedom of Information Act request, the agency's burden is to establish that it has conducted a

search reasonably calculated to uncover all responsive records.  *Weisberg*, 745 F.2d at 1485

(D.C. Cir. 1984).  The issue is not whether there might possibly exist other records responsive to

the request, but whether the search for responsive records was reasonable.  *Id*.  The agency can

establish the reasonableness of its search by affidavits if they are relatively detailed, non-

conclusory, and made in good faith.  *Weisberg*, 745 F.2d at 1485.  Summary judgment is

appropriate where the agency submits  a "'reasonably detailed affidavit, setting forth the search

terms and the type of search performed, and averring that all files likely to contain responsive

materials (if such records exist) were searched'", unless "a review of the record raises substantial

doubt" about the adequacy of the search. *Valencia-Lucena v. United States Coast Guard*, 180

F.3d 321, 326 (D.C. Cir. 1999), quoting *Oglesby v. Dept. of Army*, 920 F.2d 57, 68 (D.C. Cir.

1990).

      FOIA does not require that an agency search every division or field office in response to a

FOIA request when responsive documents are likely to be located in one place. *Marks v. Dep't*

*of Justice*, 578 F.2d 261, 263 (9th Cir. 1978).  "When a request does not specify the locations in

which an agency should search, the agency has discretion to confine its inquiry to a central filing

system if additional searches are unlikely to produce any marginal return; in other words, the

agency generally need not 'search every record system.'" *Campbell v. U.S. Dept. of Justice*, 164

F.3d 20, 28 (D.C. Cir. 1998), quoting *Oglesby*, 920 F.2d at 68.  "The agency is not required to

speculate about potential leads" to the location of responsive documents, *Kowalczyk v. Dep't of*

*Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996), although it is required "to follow through on obvious

leads to discover requested documents." *Valencia-Lucena*, 180 F.3d at 325.

**1.**      **Defendant Has Conducted an Adequate Search for Responsive Records.**

      Plaintiff  requested a copy of FBI file number 95A-HQ-1214942.  Hardy Dec. at ¶  5.

The FBI has a Central Records System which enables it to maintain all pertinent information it

has acquired in the course of its mandated law enforcement responsibilities. *Id*. at ¶ 15.  The

system consists of a numerical sequence of files broken down according to subject matter. *Id.*

When a case is opened, it is assigned a Universal Case File Number  *Id.* at ¶ 18

      The FBI conducted a search of the CRS  using the file number provided by plaintiff in his

FOIA request.  Hardy Dec. at ¶ 19.  That file physically was retrieved  and 123 pages of

documents were found in it.  Hardy Dec. at ¶ 19.   Defendant's search was reasonably calculated

to obtain all documents responsive to plaintiff's request.

**2.  Defendant Has Adequately Justified Its Withholding of Records.**

>        **a.  Justification for Non-disclosure under the Privacy Act**

FBI file number 95A-HQ-1214942 is a part of the FBI Privacy Act System of Records.

Agency regulations at 28 C.F.R. §16.96 exempt the FBI's Central Records System (which

includes the records at issue)  from the PA's access provisions as authorized by 5 U.S.C.

§552a(j)(2).   Hardy Dec. at ¶¶ 24-25.  Subsection (j)(2)exempts records:

> **(2)** maintained by an agency or component thereof which performs as its principal
> function any activity pertaining to the enforcement of criminal laws, including
> police efforts to prevent, control, or reduce crime or to apprehend criminals, and
> the activities of prosecutors, courts, correctional, probation, pardon, or parole
> authorities, and which consists of (A) information compiled for the purpose of
> identifying individual criminal offenders and alleged offenders and consisting
> only of identifying data and notations of arrests, the nature and disposition of
> criminal charges, sentencing, confinement, release, and parole and probation
> status; (B) information compiled for the purpose of a criminal investigation,
> including reports of informants and investigators, and associated with an
> identifiable individual; or (C) reports identifiable to an individual compiled at any
> stage of the process of enforcement of the criminal laws from arrest or indictment
> through release from supervision.

 5 U.S.C. §552a(j)(2).

In order to meet the threshold requirement for an agency to exempt records pursuant to

(j)(2), the system of records must be maintained by "an agency or component thereof which

performs as its principal function any activity pertaining to the enforcement of criminal laws."

The FBI investigates and assists in the investigation of federal criminal offenses such as those

committed by plaintiff.  *See* Hardy Dec. at ¶25.  Therefore one of its principal functions pertains

to the enforcement of criminal laws.

Agencies must also be able to demonstrate that the records or information at issue were compiled for law enforcement purposes. *See e.g. Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 340 (D.C.Cir. 1984) (citing with approval *Pratt v. Webster*, 673 F.2d 408, 420-21 (D.C.Cir. 1982). The records identified pursuant to Plaintiff's request concern forensic examination of evidence sent to the FBI laboratory for testing by the United States Department of the Interior, National Park Service, U.S. Park Police. U.S. Park Police identified plaintiff as a suspect in the sexual assault of a minor at the Agricultural Research Center, Beltsville, Maryland. These documents were created and maintained by the U.S. Park Police and the FBI in the performance of their duties to enforce criminal laws. the criminal investigation, arrest and prosecution of the plaintiff, the materials were necessarily compiled for law enforcement purposes. Hardy Dec. at ¶25. Therefore, the FBI determined that the responsive records were not disclosable under the PA. *See, Hatcher v. U.S. Dept. of Justice Office of Information and Privacy Act*, 910 F.Supp. 1, 2-3 (D.D.C. 1995). Accordingly, the FBI next reviewed the records under the provisions of the FOIA.

**b. Justification for Non-disclosure under FOIA**

**1.    The FBI Properly Applied 5 U.S.C. 552(b)(2) (Exemption 2)**

Title 5, United States Code, Section 552 (b)(2) (hereinafter Exemption 2) exempts from mandatory disclosure records "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Exemption 2 applies primarily to two types of materials: (1) internal agency matters so routine or trivial that they could not be "subject to ... a genuine and significant public interest;" and (2) internal agency matters of some public interest "where disclosure may risk circumvention" of statutes or agency regulations. *Department of Air Force v.*

8

*Rose*, 425 U.S. 352, 369-70 (1976); *National Treasury Employees Union v. United States Custom Service*, 802 F.2d 525, 528-30 (D.C. Cir. 1986); *Crooker v. Bureau of Alcohol, Tobacco and Firearms*, 670 F.2d 1051, 1073-74 (D.C. Cir. 1981). Depending upon the nature of the information, documents will fall within either the "high (b)(2) category" or the "low (b)(2) category."

"High (b)(2)" exempts from mandatory disclosure documents relating to more substantive internal matters. *See Schiller v. NLRB*, 964 F.2d 1205, 1207 (D.C. Cir. 1992). Withholding is permitted in this category to the extent that disclosure would reveal techniques and procedures for law enforcement investigations or prosecutions, *id*., would disclose guidelines for law enforcement investigations, or would risk circumvention of an agency statute or impede the effectiveness of an agency's law enforcement activities. *See Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051 (D.C. Cir. 1981) (en banc); *Hardy v. ATF*, 631 F.2d 653, 656 (9th Cir. 1980).

"High (b)(2)," information must satisfy a two-pronged test. First, the information must be "predominately internal." Second, the disclosure of the information must "significantly risk circumvention of agency regulations or statutes." *Crooker*, 670 F.2d at 1074. This analysis need not address the public interest which may exist in the disclosure of such information, since the public interest is legally irrelevant under the anti-circumvention aspect of Exemption 2[4]. *Voinche v. FBI*, 940 F. Supp. 323, 328 (D.D.C. 1996), *aff'd per curiam*, No. 96-5304 (D.C. Cir. June 19, 1997); *Institute for Policy Studies v. Department of the Air Force*, 676 F. Supp. 3, 5 (D.D.C.

---

[4]    The public interest aspect is irrelevant in the *Crooker* analysis for the simple fact that a "FOIA disclosure should not 'benefit those attempting to violate the law and avoid detection.'" *Voinche*, 940 F.Supp. at 328 (quoting *Crooker,* 670 F.2d at 1053).

1987).

"Low" (b)(2) information refers to internal procedures and practices of an agency, where disclosure would constitute an administrative burden unjustified by any genuine and significant public benefit. *Martin v. Lauer*, 686 F.2d 24, 34 (D.C. Cir. 1982). "Low" (b)(2) information can be protected only if the information qualifies as a personnel rule or internal practice of an agency or is sufficiently related to such a rule or practice. *See Schwaner v. Department of the Air Force*, 898 F.2d 793, 795 (D.C. Cir. 1990). Thus, trivial administrative data, such as file numbers, mail routing stamps, initials, data processing notations, brief references to previous communications, and other like administrative markings are exempt from disclosure. The notion behind this reasoning is that administrative agencies should not be burdened by responding to requests for trivial information unlikely to be the subject of public interest. *Martin v. Lauer*, 686 F.2d at 34.

The FBI applied a "Low" (b)(2) exemption, in conjunction with Exemptions (b)(6)-1 and (b)(7)(C)-1, to protect three FBI telephone numbers of FBI laboratory support personnel. Telephone numbers clearly relate to the internal practices of the FBI in that this tool is routinely used by FBI laboratory personnel during the performance of their jobs. Disclosure of the telephone numbers could subject these individuals to harassing telephone calls which could disrupt official business. Release of routine internal administrative information such as the numbers referenced above serve no public benefit, and there is no indication that there is a genuine public interest in the disclosure of these numbers. Hardy Dec. at ¶ 27. Exemption (b)(2) is invoked on the following pages of Exhibit K: ELLIOTT 3, 4, 8, 10, 126, 127, and 129. *Id.*

## 2.    The FBI Properly Applied 5 U.S.C. § 552(b)(7)(C) (Exemption 7)

Exemption 7(C) of the FOIA exempts from mandatory disclosure information compiled

10

for law enforcement purposes when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The test for determining whether records are considered law enforcement records for purposes of Exemption 7 is (1) whether the agency's investigatory activities that give rise to the documents sought are related to the enforcement of federal laws and (2) whether the nexus between the investigation and one of the agency's law enforcement duties is based on information sufficient to support at least a colorable claim of rationality. *Pratt v. Webster*, 673 F.2d 408, 420-21 (D.C. Cir. 1982). "[T]he term 'law enforcement purpose' is not limited to criminal investigations but can also include civil investigations and proceedings in its scope." *Mittleman v. Office of Personnel Management*, 76 F.3d 1240, 1243 (D.C. Cir. 1996), *cert. denied*, 519 U.S. 1123 (1997), citing *Pratt v. Webster*, 673 F.2d 408, 420 n.32 (D.C. Cir. 1982). When, however, a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies." *Keys v. U.S. Dept. of Justice*, 830 F.2d 337, 340 (D.C. Cir. 1987), citing *Pratt*, 673 F.2d at 418. A criminal law enforcement agency must simply show that "the nexus between the agency's activity . . . and its law enforcement duties" is "'based on information sufficient to support at least 'a colorable claim' of its rationality.'" *Keys*, 830 F.2d at 340, quoting *Pratt*, 673 F.2d at 421.

Once the agency has demonstrated that the records were compiled for law enforcement purposes, the Court must next consider whether the release of information withheld "could reasonably be expected to constitute an unwarranted invasion of personal privacy." This determination necessitates a balancing of the individual's right to privacy against the public's right of access to information in government files. *See, e.g., U.S. Dept. of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 776-780 (1989).

11

The Supreme Court has made clear that "whether disclosure of a private document under Exemption 7(C) is warranted must turn on the nature of the requested document and its relationship to 'the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny,' *Department of Air Force v. Rose*, [425 U.S. 352, 372 (1976)], rather than on the particular purpose for which the document is being requested." *Reporter's Committee*, 489 U.S. at 772 (internal quotation marks omitted).  Information that does not directly reveal the operations or activities of the government "falls outside the ambit of the public interest that the FOIA was enacted to serve." *Id*. at 775.  That public interest is to "shed[] light on an agency's performance of its statutory duties." *Id*. at 772.  The plaintiff bears the burden of establishing that the "public interest in disclosure is both significant and compelling in order to overcome legitimate privacy interests." *Perrone v. FBI*, 908 F. Supp. 24, 26 (D.D.C. 1995), *citing Senate of Puerto Rico v. Department of Justice*, 823 F.2d 574, 588 (D.C. Cir. 1987).

Significantly, it is the "interest of the general public and not that of the private litigant" that matters.  *Brown v. FBI*, 658 F.2d 71, 75 (2d Cir.1981).  "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'"  *Davis v. Department of Justice*, 968 F.2d 1276, 1282 (D.C. Cir.1992) (quoting *Reporters Committee*, 489 U.S. at 773) (internal quotation marks omitted).

The privacy interests of third parties mentioned in law enforcement files are "substantial," while "[t]he public interest in disclosure [of third-party identities] is not just less substantial, it is insubstantial."  *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1205 (D.C. Cir.1991).  Our court of appeals has held "categorically" that "unless access to names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to

12

confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *SafeCard Services*, 926 F.2d at 1206.

Exemption 7(C) consistently has been held to protect the identities of suspects and other persons of investigatory interest who are identified in agency records in connection with law enforcement investigations. *Reporters Committee*, 489 U.S. at 780*; Computer Professionals for Social Responsibility v. U.S. Secret Service*, 72 F.3d 897, 904 (D.C. Cir. 1996) (noting "'strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity'" (quoting *Dunkelberger v. Dept. of Justice*, 906 F.2d 779, 781 (D.C. Cir. 1990)). Indeed, an agency may categorically assert Exemption 7(C) to protect the identities of witnesses or other persons mentioned in law enforcement files in such a way as to associate them with criminal activity. *Reporters Committee*, 489 U.S. at 780; *Nation Magazine v. U.S. Customs Service*, 71 F.3d 885, 893, 895-896 (D.C. Cir. 1995); *SafeCard Services*, 926 F.2d at 1206.

Likewise, the names of law enforcement officers who work on criminal investigations have traditionally been protected against release by Exemption 7(C). *Davis,* 968 F.2d at 1281; *Lesar v. U.S. Department of Justice*, 636 F.2d 472, 487-488 (D.C. Cir. 1980). Similarly, individuals who provide information to law enforcement authorities, like the law enforcement personnel themselves, have protectable privacy interests in their anonymity. *Computer Professionals for Social Responsibility*, 72 F.3d at 904; *Farese v. U.S. Department of Justice*, 683 F. Supp. 273, 275 (D.D.C. 1987).

That a person's identity is revealed in other contexts does not vitiate the person's privacy interest; instead, the law to the contrary is clear: disclosure to a limited group in a particular

13

context - even a public trial - does not amount to a waiver of privacy rights vis a vis the public at

large. *Jones*, 41 F.3d at 247 (fact that law enforcement employee chose to testify or was required

to testify or otherwise come forward in other settings does not amount to waiver of personal

privacy); *Fitzgibbon v. CIA*, 911 F.2d 755, 768 (D.C.Cir. 1990); *Shores v. FBI*, 185

F. Supp.2d 77, 83 (D.D.C. 2002) (privacy interests not diminished by fact that plaintiff may

deduce identities through other means or because already disclosed.).

Here, Exemption (b)(7)(C) was applied to withhold the names and telephone numbers of

FBI laboratory professional support personnel, Hardy Dec. at ¶ 37; the name of a juvenile sexual

assault victim, *id*. at ¶ 38; and names and telephone numbers of United States Park Police

employees, *id*. at  ¶ 39.   The release of their identities could subject such persons to an

unwarranted invasion of their personal privacy.  Release of the identifying information could

result in unwanted efforts to gain further access to such persons or to personal information about

them, or cause them harassment, harm, or exposure to unwanted and/or derogatory publicity and

inferences, all to their detriment.  Also release of the victim's identity could subject her to

unnecessary additional humiliation.  Because of the victim's age at the time of the offense and

the personal nature of the crime, the victim has a very strong expectation of privacy which has

not been weakened by the passage of time. *Id.* at ¶¶ 37-39.

The FBI determined that there was no public interest in the release of this privacy-

protected information because dissemination of the information would shed no light on the FBI's

performance of its duties.   No public interest would counterbalance the law enforcement and

third party individuals' privacy right in the information withheld under this exemption. *Id.*

### 3.    The FBI Properly Applied 5 U.S.C. § 552(b)(6)(Exemption 6)

Exemption 6 permits the Government to withhold all information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute an unwarranted invasion of personal privacy."  See 5 U.S.C. § 552(b)(6).  The threshold issue to be determined in the application of Exemption 6 was firmly established in *U.S. Dept. of State v. Washington Post Co.*, 456 U.S. 595 (1982).  The Supreme Court made clear that all information that "applies to a particular individual" meets the threshold requirement for protection under Exemption 6.  *Id*. at 602.  "The next step under Exemption 6 involves identifying the relevant privacy interests in non-disclosure and the public interests in disclosure, and determining 'whether, on balance, disclosure would work a clearly unwarranted invasion of personal privacy.'" *Reed v. National Labor Relations Board, et al.*, 927 F.2d 1249, 1251 (D.C. Cir. 1991) (*quoting National Ass'n of Retired Federal Employees v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989) *cert. denied*, 494 U.S. 1078 (1990).  "'The phrase 'clearly unwarranted invasion of personal privacy' enunciates a policy that will involve a balancing of interests between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information.'" *Dept. of the Air Force v. Rose*, 425 U.S. 352, 372 (1976).

Pursuant to Exemption 6, the FBI has withheld the same information withheld under exemption 7, that is  names and telephone numbers of FBI laboratory professional support personnel, the name of a juvenile sexual assault victim, and names and telephone numbers of United States Park Police employees.  Hardy Dec. at ¶¶ 30-32.  Disclosure of the names and telephone numbers would not serve FOIA's purpose of revealing what the Government is up to

but could lead to an unwarranted invasion of personal privacy not contemplated even by FOIA's

pro-disclosure policy.  *Id.* Accordingly, this personal information was appropriately withheld.

### 4.    5 U.S.C. § 552(b)(3) (Exemption 3)

Title 5 U.S.C. § 552(b)(3) allows for the deletion of information "specifically exempted

from disclosure by statute (other than section 552(b) of this title), provided that such statute (A)

requires that the matters be withheld from the public in such a manner as to leave no discretion

on the issue, or (B) establishes particular criteria for withholding or refers to particular types of

matters to be withheld."  *National Ass'n of Home Builders v. Norton*, 309 F.3d 26, 36-37,

(D.C.Cir.  2002):

> Thus, "only explicit nondisclosure statutes that evidence a congressional
> determination that certain materials ought to be kept in confidence will be
> sufficient to qualify under the exemption." *Irons and Sears v. Dann,* 606 F.2d
> 1215, 1220 (D.C.Cir.1979).

*Id*. at 37.

The victim of this offense was a juvenile under the age of 18 who was sexually assaulted.

Hardy Dec. at ¶ 38 and Ex. K p. Elliott-1.  The controlling statute in this instance is 18 U.S.C.A.

§3509(d):

> **d) Privacy protection.--**
>
> **(1) Confidentiality of information.--(A)** A person acting in a capacity described
> in subparagraph (B) in connection with a criminal proceeding shall--
>
> **(i)** keep all documents that disclose the name or any other information concerning
> a child in a secure place to which no person who does not have reason to know
> their contents has access; and
>
> **(ii)** disclose documents described in clause (i) or the information in them that
> concerns a child only to persons who, by reason of their participation in the
> proceeding, have reason to know such information.

16

**(B)** Subparagraph (A) applies to--

**(i)** all employees of the Government connected with the case, including employees of the Department of Justice, any law enforcement agency involved in the case, and any person hired by the Government to provide assistance in the proceeding;

**(ii)** employees of the court;

**(iii)** the defendant and employees of the defendant, including the attorney for the defendant and persons hired by the defendant or the attorney for the defendant to provide assistance in the proceeding; and

**(iv)** members of the jury.

**(2) Filing under seal.**--All papers to be filed in court that disclose the name of or any other information concerning a child shall be filed under seal without necessity of obtaining a court order. The person who makes the filing shall submit to the clerk of the court--

**(A)** the complete paper to be kept under seal; and

**(B)** the paper with the portions of it that disclose the name of or other information concerning a child redacted, to be placed in the public record.

Title 18 U.S.C. §3509 defines the term child as follows:

**(2)** the term "child" means a person who is under the age of 18, who is or is alleged to be-

**(A)** a victim of a crime of physical abuse, sexual abuse, or exploitation; or

**(B)** a witness to a crime committed against another person.

This privacy statute specifically requires that law enforcement agencies not  disclose to the public the names and other identifying information concerning a child in relation to a criminal proceeding such as plaintiff's, in which a child was a victim of sexual abuse.  The only legislated exception to the prohibition on disclosure is reflected in subsection 4 as follows:

**(4) Disclosure of information.**--This subsection does not prohibit disclosure of the name of or other information concerning a child to the defendant, the attorney for the defendant, a multidisciplinary child abuse team, a guardian ad litem, or an adult attendant, or to anyone to whom, in the opinion of the court, disclosure is necessary to the welfare and well-being of the child.

17

Exemption (b)(3) [as well as exemption 7(c)] properly may be applied to delete the name of the individual identified as child victim.

## 3.  SEGREGABILITY

Once it is determined that an Exemption applies, FOIA mandates that "reasonably segregable" portions of exempt records be provided. 5 U.S.C. §552(b); *Trans-Pacific Policing Agreement v. United States Customs Serv.*, 177 F.3d 1022, 1028 (D.C.Cir. 1999)(district court has "affirmative duty to consider segregability issue *sua sponte*").

Eight pages previously withheld as duplicates have been provided to plaintiff with this submission.  Hardy Dec. at p. 2 fn. 1.  The declaration of Mr. Hardy reflects that only names and telephone numbers were redacted from the documents at issue.  Thus, the FBI appropriately segregated exempt material from non-exempt material under FOIA.

18

### III.  CONCLUSION

_____For the foregoing reasons, defendant FBI respectfully requests entry of summary

judgment and, dismissal of the complaint with prejudice.  A proposed order setting forth the

relief requested is attached.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN D.C. Bar # 451058
United States Attorney

_____
RUDOLPH  CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____
RHONDA C. FIELDS
Assistant United States Attorney
555 4th St., N.W,   DC 20530
202/514-6970

19

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

DAMON ELLIOTT                                    )
                                                 )
          Plaintiff                              )
                                                 )
          v                                      )
                                                 )        Civil Action No. 04-2285 (ESH)
FEDERAL BUREAU OF INVESTIGATION                  )
                                                 )
          Defendant.                             )
_____)

**<u>ORDER</u>**

This matter comes before the Court on Defendant's Motion for Summary Judgment.

Upon consideration of the Motion, the Plaintiff's response, and the entire record herein, it is by

the Court hereby

          ORDERED that Defendant's Motion for Summary Judgment is hereby GRANTED; and

it is further

          ORDERED that the above captioned matter is hereby DISMISSED WITH PREJUDICE.


SO ORDERED.

Date:                                    _____
                                         UNITED STATES DISTRICT JUDGE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 13th day of September, 2006, a copy of the foregoing Motion for Summary Judgment for Defendant FBI, Statement of Material Facts, Memorandum in Support Thereof, all attachments, and proposed order have been served by first class United States mail, postage prepaid, to:

Damon Elliott
#31034-037
F.C.C. -USP-2
POB 1034
Coleman, Florida 33521


                                          _____

                                          Rhonda C. Fields
                                          Assistant United States Attorney