IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DAMON ELLIOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-1244 (JDB) |
| | ) | |
| FEDERAL BUREAU OF INVESTIGATION, | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)     I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C. I have held this position since August 1, 2002. Before joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2)     In my official capacity as Section Chief of RIDS, I supervise approximately 232 employees who staff a total of ten (10) units and a field operational service center unit whose

collective mission is to effectively plan, develop, direct and manage responses to requests for access to FBI records and information pursuant to the FOIA; Privacy Act; Executive Order 12958, as amended; Presidential, Attorney General and FBI policies and procedures; judicial decisions and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the treatment which has been afforded the FOIA/Privacy Act ("FOIPA") request of plaintiff Damon Elliott for FBI file number 95A-HQ-1214942.

(4)     In response to plaintiff's request for records, the FBI has processed 123 pages from FBI files and six pages which were referred to the FBI from the Executive Office of U.S. Attorneys ("EOUSA"). A total of 121 pages were initially released to plaintiff. Eighty-six pages were released in full, 35 pages released in part, and eight pages were withheld as duplicates.[1] In accordance with Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), this declaration, which is being submitted in support of defendant FBI's motion for summary judgement, will provide the Court and plaintiff with a description of FBI records, an explanation

---

[1] It is the policy of the FBI to withhold obvious duplicate pages in order to speed the processing of requests and reduce duplication costs for requesters. For purposes of this litigation, the eight duplicate pages have been included in Exhibit K.

2

for the procedures used in reviewing and processing the FBIHQ records responsive to plaintiff's

FOIPA request, and a justification of FBI information which has been withheld from disclosure

pursuant to Privacy Act Exemption (j)(2), 5 U.S.C. §552a (j)(2), and FOIA Exemptions 2, 6, and

7(C), 5 U.S.C. §§ 552 (b)(2), (b)(6), and (b)(7)(C).

## CHRONOLOGY OF PLAINTIFF'S FOIA/PRIVACY ACT REQUEST

(5)     By letter dated May 17, 2001 to FBIHQ, plaintiff requested a copy of

FBI file number 95A-HQ-1214942.  **(See Exhibit A.)**

(6)     By letter dated June 6, 2001, FBIHQ acknowledged receipt of plaintiff's request

and assigned the request FOIPA Number 0944088.  **(See Exhibit B.)**

(7)     By letter dated August 13, 2001, FBIHQ advised plaintiff that it had reviewed

124 pages and released 116 pages[2] to plaintiff, with certain information withheld pursuant to

Privacy Act Exemption (j)(2) and FOIA Exemption 7C.  Plaintiff was advised of his right to

appeal the FBI's action to the Department of Justice, Office of Information and Privacy ("OIP").

**(See Exhibit C.)**

(8)     By letter dated August 28, 2001, plaintiff appealed to OIP, requesting a complete

copy of FBI file number 95A-HQ-1214942.  **(See Exhibit D.)**

(9)     By letter dated September 4, 2001, plaintiff addressed a second letter to OIP

requesting eight (8) pages that the FBI withheld in full.  **(See Exhibit E.)**

(10)     By letter dated September 18, 2001 OIP acknowledged receipt of plaintiff's

appeal and assigned it Appeal Number 01-3698.  **(See Exhibit F.)**

---

[2] These totals included the FBI cover sheet for FBI file number 95-HQ-1214942, which
has not been counted as a page for purposes of this declaration.

(11)    By letter dated July 9, 2002, OIP affirmed the FBI's action.  Plaintiff was advised

that the FBI properly withheld certain information pursuant to Exemption (j)(2) of the Privacy

Act and FOIA Exemption 7(C).  Plaintiff was advised that if he remained dissatisfied he could

seek judicial review in accordance with 5 U.S.C. § 552 (a) (4) (B).  **(See Exhibit G.)**

(12)    By letter dated February 8, 2001, plaintiff submitted a FOIPA request to the

Executive Office for U.S. Attorneys ("EOUSA") seeking access to all records concerning

himself as well as all exhibits in criminal case number PJM 97-053 (U.S. District Court District

of Maryland (Greenbelt.)  **(See Exhibit H.)**

(13)    During its processing of documents responsive to plaintiff's FOIPA request,

EOUSA located six pages which originated with the FBI.  By letter dated December 3, 2002, the

EOUSA referred these six pages to the FBI for processing and direct response to the requester.

**(See Exhibit I.)**

(14)    By letter dated July 23, 2003, FBIHQ released six pages to plaintiff from the

EOUSA referral.  The release letter notified plaintiff that deletions were made pursuant to

Exemption (j)(2) of the Privacy Act and FOIA Exemptions 2 and 7(C).  Plaintiff was advised that

his case was assigned Request Number GR 02-128 and that he could appeal any denials in the

release to OIP.  **(See Exhibit J.)**

## EXPLANATION OF THE FBI'S CENTRAL RECORDS SYSTEM

(15)    The CRS used by the FBI enables it to maintain all pertinent information which it

has acquired in the course of fulfilling its mandated law enforcement responsibilities.  The records

maintained in this CRS consist of administrative, applicant, criminal, personnel, and other files

compiled for law enforcement purposes.  This system consists of a numerical sequence of files

4

broken down according to subject matter. The subject matter of a file may relate to an individual,

organization, company, publication, activity, or foreign intelligence matter. Certain records in this

system are maintained at FBIHQ. Records which are pertinent to specific field offices are

maintained in those field offices.

(16)    Through the General Indices, FBIHQ and each field division can access the CRS.

The General Indices are arranged in alphabetical order and consist of an index on various subjects,

including the names of individuals and organizations. Only information considered pertinent,

relevant or essential for future retrieval is indexed. Without a "key" (index) to this mass of

information, information essential to ongoing investigations could not be readily retrieved. The

FBI files would thus be merely archival in nature and could not effectively be used to serve the

mandated mission of the FBI, which is to investigate violations of federal criminal statutes.

Therefore, the General Indices to the CRS are the means by which the FBI can determine what

retrievable information, if any, the FBI may have in the CRS on a particular subject.

(17)    Communications directed to FBIHQ from various field offices and Legal Attaches

(Legats) are filed in the pertinent case files and indexed to the names of individuals, groups, or

organizations, which are listed in the case captions or titles as subjects, suspects, or as victims.

Searches made in this index to locate records concerning particular subjects are made by searching

the name of the subject requested in the index.

(18)    On or about October 16, 1995, the Automated Case Support ("ACS") system was

implemented for all Field Offices, Legats and FBIHQ. More than 105 million records were

converted from automated systems previously utilized by the FBI. ACS consists of the following

three integrated, yet separately functional, automated applications that support case management

functions for all FBI investigative and administrative cases:

(a) Investigative Case Management ("ICM") – ICM provides the ability to open, assign, and close investigative and administrative cases as well as to set, assign, and track leads. A case is opened by the Office of Origin (OO), which sets leads for itself and other field offices, as needed. The offices that receive the leads are referred to as Lead Offices ("LOs"), formerly known as Auxiliary Offices. When a case is opened, it is assigned a Universal Case File Number ("UCFN") which is used by FBIHQ and all offices that are conducting or assisting in the investigation. Using a fictitious file number "12-WF-1234" as an example, an explanation of the UCFN is set forth: "12" indicates the classification for that specific type of investigation, which in this example denotes a "Drug" investigation; "WF" is the abbreviated form used for the Office of Origin of this investigation, which here is the FBI's Washington Field Office; and, "1234" indicates the individual case number assigned to a particular investigation.

(b) Electronic Case File – ECF serves as the central electronic repository for the FBI's official text-based documents. ECF supports the universal serial concept, where only the creator of a document serializes it into a file, providing single source entry of serials into the computerized system. All original serials are maintained in the OO case file.

(c) Universal Index ("UNI") – UNI continues the universal concepts of ACS by providing a complete subject/case index to all investigative and administrative cases. Only the OO is required to index cases. The Lead Office may index additional information as needed. UNI is an 94.6 million record index that functions to index names to cases, and to search names and cases for use in FBI investigative and administrative cases. Names of individuals or non-individuals are recorded with identifying information such as the date or place of birth, race, sex,

6

locality, Social Security number, address, or date of an event.

## EXPLANATION OF THE SEARCH FOR RECORDS

(19)    In response to plaintiff's request, FBIHQ searched the CRS using the file number provided by plaintiff in his FOIA request. A file, consisting of 123 pages was located and processed.

## EXPLANATION OF THE FORMAT USED FOR THE
## JUSTIFICATION OF DELETED MATERIAL

(20)    All documents were processed to achieve maximum disclosure consistent with the access provisions of the FOIA. Every effort was made to provide plaintiff with all material in the public domain and with all reasonably segregable portions of releasable material. To further describe the information withheld could identify the material sought to be protected. Copies of released pages are attached as **Exhibit K**. Each page of Exhibit K is consecutively numbered "Elliott-1 through Elliott-129" at the bottom right corner of the page. The exemptions asserted by the FBI as grounds for non-disclosure of portions of documents are Privacy Act Exemption (j)(2) and  FOIA Exemptions 2, 6 and 7(C).

(21)    Copies of the pages contain, on their face, coded categories of exemptions which detail the nature of the information withheld pursuant to the provisions of the FOIA. To further describe the information withheld in more detail could identify the very material that the FBI is protecting. No reasonably segregable, nonexempt portions were withheld from plaintiff. The coded categories are provided to aid the Court's review of the FBI's explanations of FOIA exemptions used to withhold the protected material. Accordingly, a review of this information will reveal that all material withheld is exempt from disclosure pursuant to a FOIA exemption

or it is so intertwined with protected material that segregation is not possible without revealing
the underlying protected material.

## MECHANICS OF USING THE CODED FORMAT
## WITH THE EXEMPTION CATEGORIES

(22)    A coded format is used in this case to better assist the Court and plaintiff in
reviewing the information withheld within the context of the documents themselves.
Each instance of information withheld on the attached documents is accompanied by a coded
designation that corresponds to the categories listed below.  For example, if "(b)(7)(C)-1"
appears on a document, the "(b)(7)(C)" designation refers to "Exemption (b)(7)(C)" of the FOIA
concerning "Unwarranted Invasion of Privacy."  The numerical designation following the
"(b)(7)(C)" narrows the main category into the more specific subcategory, "Names and/or
Identifying Information concerning FBI Laboratory Professional Support Employees."
Listed below are the categories used to explain the FOIA exemptions asserted to withhold the
protected material.

| SUMMARY OF JUSTIFICATION CATEGORIES | |
|---|---|
| **CODED CATEGORIES** | **INFORMATION WITHHELD** |
| **Category (b)(2)** | **INTERNAL AGENCY RULES AND PRACTICES**<br>FBI Telephone Numbers (Cited in conjunction with (b)(6)-1 and (b)(7)(C)-1.) |
| **Category (b)(6)** | **CLEARLY UNWARRANTED INVASION OF PERSONAL PRIVACY** |
| (b)(6)-1 | Names of and/or Identifying Information Concerning FBI Laboratory Professional Support Employees (Cited in conjunction with (b)(7)(C)-1.) |
| (b)(6)-2 | Name of Juvenile Sexual Assault Victim (Cited in conjunction with (b)(7)(C)-2.) |

| SUMMARY OF JUSTIFICATION CATEGORIES | |
|---|---|
| (b)(6)-3 | Names of and/or Identifying Information Concerning Non-FBI Federal Government Employees (Cited in conjunction with (b)(7)(C)-3.) |
| Category (b)(7)(C) | UNWARRANTED INVASION OF PERSONAL PRIVACY |
| (b)(7)(C)-1 | Names of and/or Identifying Information Concerning FBI Laboratory Professional Support Employees (Cited in conjunction with (b)(6)-1.) |
| (b)(7)(C)-2 | Name of Juvenile Sexual Assault Victim (Cited in conjunction with (b)(6)-2.) |
| (b)(7)(C)-3 | Names of and/or Identifying Information Concerning Non-FBI Federal Government Employees (Cited in conjunction with (b)(6)-3.) |

## JUSTIFICATION FOR REDACTIONS

(23)    Paragraphs 19-34 infra., explain the FBI's rationale for withholding each

particular category of information under the specific exemptions described above.

## PRIVACY ACT EXEMPTION (j)(2)

(24)    Subsection (j)(2) of the Privacy Act exempts from mandatory disclosure systems

of records "maintained by an agency or component thereof which performs as its principal

function any activity pertaining to the enforcement of criminal laws, including police efforts to

prevent, control, or reduce crime or to apprehend criminals..."

(25)    Both FBI file number 95A-HQ-1214942 and the pages referred to the FBI by the

EOUSA concern forensic examination of evidence sent to the FBI laboratory for testing by the

United States Department of the Interior, National Park Service, U.S. Park Police. U.S. Park

Police identified plaintiff as a suspect in the sexual assault of a minor at the Agricultural Research

Center, Beltsville, Maryland. These documents are maintained under plaintiff's name and are,

9

therefore, Privacy Act records. These documents were, however, created and maintained by the

U.S. Park Police and the FBI in the performance of their duties to enforce criminal laws.

Accordingly, the documents contained in this file and the referral documents are law enforcement

records which are exempt from disclosure under the Privacy Act, 5 U.S.C. § 552a (j)(2) in

conjunction with 28 C.F.R. § 16.96. Although access to these documents was denied under the

Privacy Act, they have been processed under the access provisions of the FOIA to achieve

maximum disclosure.

### EXEMPTION (b)(2)
### INTERNAL RULES AND PRACTICES

(26)    5 U.S.C. § 552 (b)(2) exempts from disclosure information "related solely

to the internal personnel rules and practices of an agency." This exemption protects routine

internal administrative matters and functions of the FBI which have no effect on the public at

large. Disclosure of this information could impede the effectiveness of the FBI's internal law

enforcement procedures. The FBI did not notify plaintiff of the assertion of Exemption (b)(2) in

its release of August 13, 2001. The agency is asserting Exemption (b)(2) at this stage to further

protect information withheld under another exemption. The documents provided at Exhibit K

reflect the addition of Exemption 2 where appropriate.

(27)    Exemption (b)(2) has been asserted in conjunction with Exemptions (b)(6)-1

and (b)(7)(C)-1 to protect three duty telephone numbers of FBI laboratory support personnel.

Telephone numbers clearly relate to the internal practices of the FBI in that this tool is routinely

used by FBI laboratory personnel during the performance of their jobs. Disclosure of the

telephone numbers could subject these individuals to harassing telephone calls which could

disrupt official business.  Release of routine internal administrative information such as the numbers referenced above serve no public benefit, and there is no indication that there is a genuine public interest in the disclosure of these numbers.  Accordingly, because these internal numbers relate solely to the FBI's internal practices, because disclosure would not serve any public interest, and because disclosure could impede the FBI's effectiveness, the FBI withheld this information pursuant to Exemption (b)(2).  Exemption (b)(2) is invoked on the following pages of Exhibit K: ELLIOTT 3, 4, 8, 10, 126, 127, and 129.

## FOIA EXEMPTION (b)(6)
## CLEARLY UNWARRANTED INVASION OF PERSONAL PRIVACY

(28)    5 U.S.C. § 552 (b)(6) exempts from disclosure "all information in government records about individuals in personnel and medical files and similar files when the disclosure of such information would constitute a clearly unwarranted invasion of personal privacy."

(29)    When withholding information pursuant to this exemption, the FBI is required to balance the privacy interests of the individuals mentioned in these records against any public interest in disclosure.  In asserting (b)(6), each piece of information was scrutinized to determine the nature and strength of the privacy interest of any individual whose name and/or phone number appears in the documents at issue.  In withholding this information, the individual's privacy interest was balanced against the public's interest in disclosure.  In each instance where the information was withheld, it was determined that individual privacy interests outweighed any public interest.  The public interest in disclosure of the information is determined by whether the information in question would inform plaintiff or the general public about the FBI's performance of its mission to enforce federal criminal and national security statutes and/or

how the FBI actually conducts its internal operations and investigations. It was determined that

the privacy interests are as strong now as when the records were originally created. To reveal

names in the context of these records could reasonably be expected to cause embarrassment,

humiliation, harassment, unsolicited inquiries, and would not add to the public's understanding of

the inner workings of the government. In each instance where information was withheld, it was

determined that the individual's privacy rights outweighed the public interest. The FBI did

not notify plaintiff of the assertion of Exemption (b)(6) in its release of August 13, 2001 and

July 23, 2003. The agency is asserting Exemption (b)(6) at this stage to further protect

information withheld under another exemption. The documents provided at Exhibit K reflect

the addition of Exemption (b)(6) where appropriate.

**(b)(6)-1**
**Names of and/or Identifying Information**
**Concerning FBI Laboratory Professional Support Personnel**

(30)    Exemption (b)(6)-1 has been cited in conjunction with (b)(7)(C)-1 to protect the

names of FBI laboratory professional support personnel responsible for conducting or reviewing

the testing and analysis reported in these documents concerning plaintiff. The FBI also asserted

Exemption (b)(6)-1 to protect FBI telephone numbers belonging to three laboratory employees.

FBI support personnel are routinely assigned to handle tasks relating to FBI investigations. These

individuals are in positions to access information concerning official law enforcement

investigations. Disclosure of the identities of these individuals could make them targets of

harassing inquiries for unauthorized access to information from FBI files. Accordingly, the FBI

has determined that these FBI support employees maintain a substantial privacy interest. The FBI

next balanced the privacy interest of the FBI support employees against the public interest in

12

disclosure. The FBI determined that the disclosure of the specific names and phone numbers of these individuals would shed no light on the performance of the FBI's mission to enforce federal criminal and national security statutes. Accordingly, after balancing the competing interests, the FBI concluded that no public interest would be served by disclosing the identities of the support employees to the general public. The disclosure of the names of the FBI support employees would constitute a clearly unwarranted invasion of their personal privacy; and therefore, the FBI has properly asserted Exemption (b)(6)-1 in conjunction with Exemption (b)(7)(C)-1 to withhold this information. Exemption (b)(6)-1 is cited on the following pages of Exhibit K: ELLIOT 3-5, 7, 8, 10-12, 20, 22, 25, 27, 50, 51-53, 96, 112-119, 126, 127, and 129.

### (b)(6)-2
### Name of Juvenile Sexual Assault Victim

(31)    Exemption (b)(6)-2 has been asserted in conjunction with (b)(7)(C)-2 to protect the name of the juvenile who was sexually assaulted at the Agricultural Research Center in Beltsville, Maryland on January 21, 1997. Both because of the age of the victim at the time of the assault and the personal nature of the crime, the FBI identified that the victim has a very strong expectation of privacy, which has not been weakened with the passage of time. To release the identity of this individual could subject her to unnecessary, additional humiliation which would constitute a clearly unwarranted invasion of privacy. There is no public interest to be served in releasing the identity of this individual. Exemption (b)(6)-2 has been cited in conjunction with Exemption (b)(7)(C)-2 on the following pages of Exhibit K: ELLIOTT 1, 5, 6, 12, 13, 16, 19, 20, 27-29, 53, 54, 55, 94, 96, 97, 98, 100, 121, 122, 124, and 125.

### (b)(6)-3
### Names of and/or Identifying Information Concerning Non-FBI
### Federal Government Employees

(32)    Exemption (b)(6)-3 has been cited in conjunction with Exemption (b)(7)(C)-3 to withhold the names of four United States Park Police employees as well as the telephone numbers of two of these employees.  These federal non-FBI law enforcement officers were acting in their official capacity when they requested FBI assistance.  The rationale for protecting identities of FBI support personnel found at paragraph 30, supra, also pertains to withholding the names of these federal government employees.   The release of the names and phone numbers of these law enforcement personnel would not shed light on the operations and activities of the federal government.  However, release of the identities  of these employees could subject them to unnecessary, unwarranted harassment which would constitute a clearly unwarranted invasion of their personal privacy.  Therefore, Exemption (b)(6)-3 has been cited in conjunction with Exemption  (b)(7)(C)-3 and on the following pages of Exhibit K: ELLIOTT 2-5, 12, 20, 23, 24, 27, 30, 53, 56, 96, 99 and 124.

### FOIA EXEMPTION (b)(7)
### UNWARRANTED INVASION OF PERSONAL PRIVACY
### THRESHOLD

(33)    Exemption 7 of the FOIA protects from mandatory disclosure records or information compiled for law enforcement purposes, but only to the extent that disclosure could reasonably be expected to cause one of the harms enumerated in the subpart of the exemption. See 5 U.S.C. §552(b)(7).  In this case, the harm that could reasonably be expected to result from disclosure concerns invasion of the personal privacy of federal government employees and a juvenile victim of sexual assault.

14

(34)    Before an agency can invoke any of the harms enumerated in Exemption 7, it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. Law enforcement agencies such as the FBI must demonstrate that the records at issue are related to the enforcement of federal laws and that the enforcement activity is within the law enforcement duty of that agency. In this case, the U.S. Park Police requested the FBI Laboratory Division to conduct forensic examination of evidence collected at the scene of a sexual assault. The file, classified by the FBI as 95A or "Crimes Against Persons," deals with examination of evidence related to the criminal offense of sexual assault, involving conduct proscribed by 18, U.S.C. § 2241. The documents responsive to plaintiff's request were generated by FBI employees responding to a request from a law enforcement agency to assist with investigation of a federal offense. Accordingly, the information readily meets the threshold requirement of Exemption 7. The remaining inquiry is whether disclosure of the information withheld within these documents "could reasonably be expected to constitute an unwarranted invasion of personal privacy.

## EXEMPTION (B)(7)(C)

## UNWARRANTED INVASION OF PERSONAL PRIVACY

(35)    5 U.S.C. § 552(b)(7)(C) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information... could reasonably be expected to constitute an unwarranted invasion of personal privacy..."

(36)    When withholding information pursuant to this exemption, the FBI is required to balance the privacy interests of the individuals mentioned in these records against any public

interest in disclosure. In asserting Exemption (b)(7)(C), each piece of information was scrutinized

to determine the nature and strength of the privacy interest of any individual whose name and/or

phone number appears in the documents at issue. In withholding this information, the

individual's privacy interest was balanced against the public's interest in disclosure. In each

instance where the information was withheld, it was determined that individual privacy interests

outweighed any public interest. The public interest in disclosure of the information is determined

by whether the information in question would inform plaintiff or the general public about the

FBI's performance of its mission to enforce federal criminal and national security statutes and/or

how the FBI actually conducts its internal operations and investigations. It was determined that

the privacy interests are as strong now as when the records were originally created. To reveal

names in the context of these records could reasonably be expected to cause embarrassment,

humiliation, harassment, unsolicited inquiries, and would not add to the public's understanding of

the inner workings of the government.

### (b)(7)(C)-1
### Names of and/or Identifying Information Concerning
### FBI Laboratory Professional Support Personnel

(37)    Exemption (b)(7)(C)-1 is asserted in conjunction with (b)(6)-1 to protect the

names of FBI laboratory professional support personnel responsible for conducting or reviewing

the testing and analysis reported in these documents. The FBI also asserted Exemption

(b)(7)(C)-1 to protect FBI telephone numbers belonging to three laboratory employees. The

assignment of these individuals to examinations is not by choice, and publicity regarding their

involvement in a particular investigation could subject them to harassing inquiries for

unauthorized access to information. Accordingly, the FBI has determined that the FBI support

employees maintain a substantial privacy interest. The FBI next balanced the privacy interest of each FBI support employee against the public interest in disclosure. The FBI determined that the disclosure of the names of these individuals would shed no light on the FBI's performance of its statutory duties. Accordingly, after balancing the competing interests, the FBI concluded that no public interest would be served by disclosing the identities of these individuals. The disclosure of the names of the FBI support employees would constitute an unwarranted invasion of their personal privacy; and therefore, the FBI has properly asserted Exemption (b)(7)(C)-1. Exemption (b)(7)(C)-1 is cited in conjunction with (b)(6)-1 on the following pages of Exhibit K: ELLIOT 3-5, 7, 8, 10-12, 20, 22, 25, 27, 50, 51-53, 96, 112-119, 126, 127, and 129.

### (b)(7)(C)-2
### Name of Juvenile Sexual Assault Victim

(38)    Exemption (b)(7)(C)-2 has been asserted in conjunction with (b)(6)-2 to protect the name of the juvenile who was sexually assaulted at the Agricultural Research Center in Beltsville, Maryland on January 21, 1997. Both because of the age of the victim at the time of the offense and the personal nature of the crime, the FBI identified that the victim has a very strong expectation of privacy which has not been weakened with the passage of time. To release the identity of this individual could subject her to unnecessary, additional humiliation which could constitute an unwarranted invasion of privacy. As the release of the identity of the victim does not shed light on the FBI's performance of its statutory duties there is no public interest to be served in releasing the identity of this victim. Exemption (b)(7)(C)-2 is cited in conjunction with (b)(6)-2 on the following pages of Exhibit K: ELLIOTT 1, 5, 6,12, 13, 16, 19, 20, 27-29, 53, 54, 55, 94, 96, 97, 98, 100, 121, 122, 124, and 125.

17

### (b)(7)(C)-3
### Names of and/or Identifying Information Concerning
### Non-FBI Federal Government Employees

(39)    Exemption (b)(7)(C)-3 was asserted in conjunction with (b)(6)-3 to withhold the

names of four United States Park Police employees as well as the telephone numbers of two of

these employees. These federal non-FBI law enforcement officers were acting in their official

capacity when they requested FBI assistance. The rationale for protecting the identities of the FBI

employees found at paragraph 25, supra, also pertains to withholding the names of these

employees. The release of the names and phone numbers of these law enforcement officers would

not shed light on the operations and activities of the federal government, therefore there is  no

public interest in the  release of this information  However, release the identities of these federal

law enforcement employees could subject them to unnecessary, unwarranted harassment which

could constitute an unwarranted invasion of privacy. Exemption (b)(7)(C)-3 is cited in

conjunction with (b)(6)-3 on the following pages of Exhibit K: ELLIOTT 2-5,12, 20, 23, 24, 27,

30, 53, 56, 96, 99 and 124.

### CONCLUSION

(40)    In response to plaintiff's request for records from a specific file, the FBI located

one file consisting of 123 pages, and received a referral consisting of six pages. Out of the 129

pages reviewed by the FBI, 121 were initially released to plaintiff. The only pages withheld in

full were eight pages that were deemed to be duplicates of other pages previously released. These

eight duplicate pages have now been provided to plaintiff. Therefore, the only information

withheld from plaintiff is names and phone numbers of third parties. The FBI has released all

reasonably segregable material possible in response to the FOIPA request of plaintiff Damon

Elliott as well as the documents referred by EOUSA. The information contained in this declaration constitutes a complete and accurate description of the actions taken by the FBI pertaining to the FOIPA request/referral. Each document was individually reviewed for segregability. There is no additional segregable portion of any of the withheld material which can be released. As demonstrated above, the only information withheld by the FBI consists of information that would impede the effectiveness of the FBI's internal law enforcement procedures or infringe upon the personal privacy of third parties. Accordingly, the FBI has released all reasonably segregable, non-exempt information.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A through K attached hereto are true and correct copies.

Executed this _____13th_____ day of September, 2006.

DAVID M. HARDY
Section Chief
Record/Information Dissemination
Records Management Division
Federal Bureau of Investigation
Washington, D.C.